UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LENWOOD SUTTERS,

                        CASE NO. 2:14-CV-13567
            Plaintiff,     JUDGE DAVID M. LAWSON
                        MAGISTRATE JUDGE ANTHONY P. PATTI

v.

U.S. BANK, N.A., and
NATIONSTAR MORTGAGE, L.L.C.,

            Defendants,
_____/

## REPORT AND RECOMMENDATION REGARDING DEFENDANTS U.S. BANK AND NATIONSTAR MORTGAGE'S MOTION TO DISMISS (DE 6)

**I.      RECOMMENDATION:**    The Court should grant Defendants U.S. Bank and Nationstar Mortgage's motion to dismiss (DE 6).

**II.     REPORT:**

**A.     Background**

On June 1, 2007, Lenwood Sutters and his wife, Gina Sutters, executed a mortgage on the property commonly known as 3617 Sherwood Drive, Flint, Michigan 48503 in favor of Mortgage Electronic Registration Systems, Inc. (MERS).    DE 1 at 15-27, 34-35; DE 6-3 at 1-13.    This was done in conjunction with a $108,000 adjustable rate note Lenwood Sutters entered into with First

Franklin Financial Corp.   DE 6-2.   The Sutters also signed a prepayment rider (DE 6-3 at 14) and an adjustable rate rider (DE 6-3 at 15-17).

On August 24, 2011, MERS assigned the mortgage to U.S. Bank, N.A.   DE 1 at 28-29; DE 6-4.   Almost two years later, by a letter dated July 12, 2013, Nationstar Mortgage informed Mr. Sutters that, as of July 1, 2013, Bank of America, N.A. had transferred the servicing of his mortgage loan to Nationstar Mortgage.   DE 6-12.   On July 23, 2013, Bank of America assigned the mortgage to Nationstar Mortgage, L.L.C.   DE 1 at 30-31; DE 6-6.

It appears that Mr. Sutters sent a document titled "R.E.S.P.A. QUALIFIED WRITTEN REQUEST" to Nationstar during April 2014.   DE 1 at 14.[1]   During July 2014, a corporate assignment of mortgage was recorded to correct the chain between the August 24, 2011 and July 23, 2013 assignments, in other words, to recognize that the mortgage had been assigned from U.S. Bank to Bank of America.   *See* DE 1 at 32-33; DE 6-5.   On August 18, 2014, Nationstar Mortgage, L.L.C. assigned the mortgage to U.S. Bank, N.A.   DE 1 at 36-37; DE 6-7.

---

[1]This attachment includes a tracking number (7011 1150 0001 9418 3233) for an item which was accepted in Flint, MI on April 25, 2014 and delivered to Lewisville, TX on April 28, 2014.   *See* www.usps.com.

Lenwood Sutters alleges that "[o]n or about September 5, 2014, [he] received notice from . . .Orlans Associates, P.C., threatening to [sell] Plaintiff's home on behalf of [D]efendant U.S. [B]ank."   DE 1 ¶ 21.

## B.    Complaint

Plaintiff Lenwood Sutters filed this lawsuit against Defendants U.S. Bank, N.A., and Nationstar Mortgage, L.L.C., on September 15, 2014.[2]   Plaintiff's complaint alleges (I) assignment in contravention of trust; (II) request for preliminary injunctive relief; (III) violation of the Fair Debt Collection Practices Act (FDCPA); and (IV) violation of § 2605(e) of the Real Estate Procedures Settlement Act (RESPA).   DE 1 ¶¶ 22-54.[3]

## C.    Pending Motion

---

[2]The undersigned notes Plaintiff's Complaint's introductory allegation that Defendants U.S. Bank and Nationstar Mortgage have violated 15 U.S.C. § 1641 ("Liability of assignees") of the Truth in Lending Act (TILA), 15 U.S.C. §§ 1601-1667f.   *See* DE 1 ¶ 1; *see also* DE 1 ¶ 2.   However, an alleged violation of TILA it is not one of Plaintiff's four causes of action.   *See* DE 1 ¶¶ 22-54. Thus, this report does not interpret Plaintiff's Complaint (DE 1) as alleging an independent TILA cause of action.

[3]Judge Lawson referred this case to Magistrate Judge Majzoub for pretrial matters.   DE 7.   However, on January 13, 2015, this case was reassigned to me. DE 14.

In lieu of filing an answer, on October 14, 2014, Defendants U.S. Bank, N.A., and Nationstar Mortgage, L.L.C. filed the instant motion to dismiss under Fed. R. Civ. P. 12(b)(6).   Specifically, Defendants argue:

I.      Plaintiff's allegation of "assignment in contravention of trust" fails to state a claim.

II.     Plaintiff fails to state a claim for violation of the Fair Debt Collection Practices Act.

III.    Plaintiff has not alleged any plausible claim under the Real Estate Settlement Procedures Act.

IV.     Plaintiff is not entitled to injunctive relief[.]

DE 6 at 13-23.

Pursuant to the Court's October 21, 2014 order (DE 8), Plaintiff's response was due on or before November 24, 2014.   Plaintiff filed a response on December 5, 2014.   DE 11.[4]   Defendants filed a reply on December 19, 2014.   DE 13.

**D.      Standard for Motion to Dismiss**

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "construe the complaint in the light most favorable to plaintiff and accept all allegations as true."   *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012).   "To survive a motion to dismiss, a complaint must contain

---

[4]Along with his response, Plaintiff filed a declaration (DE 12), indicating that he initially forwarded his response on November 20, 2014.

4

sufficient factual matter, accepted as true, to state a claim to relief that is plausible

on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not

contain "detailed factual allegations," but it must contain more than "labels and

conclusions" or "a formulaic recitation of the elements of a cause of action").

Facial plausibility is established "when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Iqbal*, 556 U.S. at 678.   "The plausibility of an inference

depends on a host of considerations, including common sense and the strength of

competing explanations for the defendant's conduct." *16630 Southfield Ltd.,*

*P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

Furthermore, the Court holds *pro se* complaints to "less stringent standards

than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520

(1972).   However, even in pleadings drafted by *pro se* parties, "'courts should not

have to guess at the nature of the claim asserted.'" *Frengler v. Gen. Motors*, 482

F. App'x 975, 976-77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594

(6th Cir. 1989)).

**E.    Discussion**

1.     **Whether the assignment(s) of the mortgage contravene the securitized trust to which Plaintiff's mortgage and underlying note belong?**

Plaintiff's first cause of action alleges that the assignment(s) of his mortgage contravened the trust.   *See* DE 1 ¶¶ 22-27.   By way of background, Plaintiff alleges that his "mortgage and underlying note [were] bundled into a securitized trust that was formed under New York [t]rust law."   DE 1 ¶ 10.   Plaintiff contends that the Pooling and Service Agreement (PSA) that "governs the Securitized Trust to which Plaintiff's Mortgage and underlying Note belongs," required that the assignment be completed by the closing date of the trust which date was June 1, 2007."   DE 1 ¶ 15.   Plaintiff claims that the August 24, 2011, July 23, 2013, July 17, 2014 and August 18, 2014 assignments "are in contravention of the PSA all having been performed long after the trust closed." DE 1 ¶¶ 11-14, 16.   Moreover, Plaintiff contends that Defendant U.S. Bank's assignment was performed after the default.   DE 1 ¶ 18.

Specifically, Plaintiff claims the assignments are void *ab initio,*[5]  because the assignments were performed after the trust had closed, which violated the PSA's terms.   DE 1 ¶ 23.   It is Plaintiff's position that "Defendant U.S. Bank does not

_____

[5]*Ab initio* is a Latin phrase meaning "[f]rom the beginning" *Black's Law Dictionary*, Ninth Edition, p. 5.   In other words, Plaintiff appears to be alleging that the assignment has at no time had any legal validity.

6

have a valid assignment upon which it could foreclose and [sell] Plaintiff's home

where said assignment is void ab initio." DE 1 ¶ 24. Citing 28 U.S.C. § 1652

("State laws as rules of decision")[6] and *Royal Bank of Canada v. Tentham Corp.*,

665 F.2d 515, 516 (5th Cir. 1981), Plaintiff alleges that "this court has a duty to

apply New York trust law to Plaintiff's case…." DE 1 ¶ 25-26.

In the dispositive motion, Defendants cite Mich. Comp. Laws §

600.3204(1)(d)[7] and contend that U.S. Bank is entitled to foreclose on the

mortgage. In support of this position, Defendants rely upon *Residential Funding

Company, LLC v. Saurman*, 490 Mich. 909, 910; 805 N.W.2d 183 (2011)[8] and

*Wright v. Mortgage Electronic Registration Systems, Inc.*, No. 11-12756, 2012 WL

---

[6]"The laws of the several states, except where the Constitution or treaties of the United States or Acts of Congress otherwise require or provide, shall be regarded as rules of decision in civil actions in the courts of the United States, in cases where they apply." 28 U.S.C. § 1652.

[7]"The party foreclosing the mortgage is either the owner of the indebtedness or of an interest in the indebtedness secured by the mortgage or the servicing agent of the mortgage." Mich. Comp. Laws § 600.3204(1)(d).

[8]"[A]s record-holder of the mortgage, MERS owned a security lien on the properties, the continued existence of which was contingent upon the satisfaction of the indebtedness. This interest in the indebtedness—i.e., the ownership of legal title to a security lien whose existence is wholly contingent on the satisfaction of the indebtedness—authorized MERS to foreclose by advertisement under MCL 600.3204(1)(d)." *Saurman*, 490 Mich. at 909, 805 N.W.2d at 183.

1060069, *4 (E.D. Mich. Mar. 29, 2012) (Duggan, J.).[9]   DE 6 at 14.   Moreover,

Defendants challenge Plaintiff's standing to attack the mortgage assignments,

citing both *Livonia Properties Holdings, LLC v. 12840-12976 Farmington Road*

*Holdings, LLC*, 399 F.App'x 97, 101-104 (6th Cir. 2010) and *Wiggins v. Argent*

*Mortgage Company, LLC*, 945 F.Supp.2d 817, 823 (E.D. Mich. 2013) (Borman, J.)

("Plaintiff alleges no facts that indicate that the assignment may in some way

subject Plaintiff to double liability.").   DE 6 at 15.

In response, Plaintiff explains, he "does not allege that the purported

assignments are invalid."   Rather, he "alleges that the purported assignments are

void ab initio."   DE 11 at 5.   This is a difference without a distinction. *See,*

*Black's Law Dictionary* (9th Ed.) at 371 (an" invalid contract" is an agreement that

is either void or voidable.").   To be sure, "the debtor may assert as a defense any

matter which renders the assignment absolutely invalid or ineffective, or void, such

as, the nonassignability of the right attempted to be assigned, or a prior revocation

of the assignment.   The debtor may also question a plaintiff's lack of title or the

right to sue."   CJS ASSIGN § 132 (internal footnotes omitted); *see also Slorp v.*

---

[9]"Plaintiff notes that the *mortgage* was assigned to HSBC as Trustee in April 2011, but this does not establish that a *loan* was transferred in violation of the PSA. Plaintiff has failed to point to any provisions of the PSA that would invalidate the assignment of the mortgage."   *Wright*, 2012 WL 1060069, *4 (emphasis in original).

*Lerner, Sampson & Rothfuss*, 587 F.App'x 249, 255 (6th Cir. 2014) ("a non-party homeowner may challenge a putative assignment's validity on the basis that it was not effective to pass legal title to the putative assignee.") and *Carmack v. Bank of New York Mellon*, 534 F.App'x 508, 511-512 (6th Cir. 2013) ("Livonia's statement on standing should not be read broadly to preclude all borrowers from challenging the validity of mortgage assignments under Michigan law.").   DE 11 at 6-7. Plaintiff, himself, characterizes his complaint as implying that Defendant U.S. Bank "does not hold title to his home and therefore lacks standing to foreclose." DE 11 at 7.

However, the attachments to Plaintiff's own complaint do establish a record chain of title from the original mortgagee, MERS, to the current mortgagee, U.S. Bank.   *See* DE 1 at 28-33, 36-37; *Wright,* 2012 WL 1060069 at 5 ("the recorded assignment of the mortgage from MERS to HSBC establishes a record chain of title from the original mortgage holder, MERS, to the current record holder, HSBC. HSBC owns an interest in the indebtedness securing the mortgage. . . and is therefore permitted to foreclose by advertisement pursuant to Michigan Compiled Laws § 600.3204(1)(d).");[10]  *see also Khoshiko v. Deutsche Bank Trust Co. Americas*, No. 12-cv-14717, 2013 WL 5346400, 4 (E.D. Mich. Sept. 23, 2013)

---

[10] Citing *Saurman*, 490 Mich. at 909, 805 N.W.2d at 183.

(Goldsmith, J.) (granting defendant's motion to dismiss and referring to the assignment of mortgage and Sheriff's Deed, the Court stated:   "[h]ere, according to the documents attached by both Plaintiff and Defendant, Defendant was the mortgagee of record.   . . . Therefore, Defendant has presented uncontroverted evidence of its capacity to foreclose by advertisement.").   Thus, it appears that U.S. Bank has the capacity to foreclose by advertisement.

There are also two standing problems with respect to Plaintiff's cause of action based upon an assignment which allegedly contravenes the securitized trust (DE 1 ¶¶ 22-27).

### a.  Plaintiff does not have standing to challenge the assignments

In his response (DE 11 at 6), Plaintiff points out that "a non-party homeowner may challenge a putative assignment's validity on the basis that it was not effective to pass legal title to the putative assignee."   *Slorp*, 587 F.App'x at 255.   However, as Defendants point out, "*Slorp* does not alter the framework set forth in *Livonia* and its progeny."   *Facione v. CHL Mortg. Pass-Through Trust 2006-J1*, No. 14-12426, 2014 WL 6632224, 4 (E.D. Mich. Nov. 21, 2014) (Edmunds, J.).   DE 13 at 2.   "A person who is neither a party to the contract nor in privity with the parties, and who is not a third-party beneficiary of the contract, is said to lack 'standing' to enforce the contract's terms and to challenge its

10

validity." *Slorp*, 587 F.App'x at 254.   Noting that challenges to mortgage

assignments "may be permitted 'under limited circumstances,' ostensibly where the

borrower has a valid claim that he will face double liability[,]" *Carmack v. Bank of*

*New York Mellon*, 534 F.App'x 508, 512 (6th Cir. 2013), Defendants correctly

contend that "Plaintiff fails to allege and cannot establish that the exception applies

and therefore he lacks standing to challenge the mortgage assignments." DE 13 at

2. In support of this argument, Defendants rely upon *Robinson v. Select Portfolio*

*Servicing, Inc.*, 522 F.App'x 309, 312-313 (6th Cir. 2013)[11]  and *Dye v. Wells*

*Fargo Home Mortg.*, No. 13-14854, 2014 WL 1908285, 5 (E.D. Mich. May 13,

2014) (Borman, J.).[12]   DE 13 at 3.   Finally, referring to Nationstar's August 2014

assignment of the mortgage to U.S. Bank (DE 1 at 36-37, DE 6-7), and relying

upon *Powell v. Bank of New York Mellon*, No. 12-14411, 2014 U.S. Dist. LEXIS

95121 (E.D. Mich. July 14, 2014) (Leitman, J.) and *Hall v. U.S. Bank, N.A.*, No.

---

[11]"[B]ecause the Robinsons were never placed in a predicament that would require them to incur double payments on the same obligation, the district court did not err in concluding that the plaintiffs lacked standing to contest the validity of the assignment of their mortgage to the trust."   *Robinson*, 522 F.App'x at 312-313; *Livonia Property Holdings*, LLC, 399 F.App'x at 102; 6A C.J.S. *Assignments* § 132 (2010).

[12]"Plaintiff does not allege any facts that would support such defenses and does not plausibly allege that he has ever been or will be placed in a situation that would cause him to incur double payments on his Mortgage, he [therefore] lacks standing to challenge the assignment of his mortgage from MERS to Wells Fargo." *Dye*, 2014 WL 1908285, 5.

13-15276, 2014 WL 4639357, 4 (E.D. Mich. Sept. 16, 2014) (Zatkoff, J.),[13]

Defendants correctly note that U.S. Bank *was able to foreclose*, because it is the

"record mortgagee of the Property under [Mich. Comp. Laws] § 600.3204(1)(d)."

DE 13 at 3-4.   These arguments are well-taken. The undersigned is satisfied that

Plaintiff lacks standing to challenge the assignments under the facts alleged here,

and that his case does not fit within the limited exception under which standing

could be maintained.

### b.   Plaintiff does not have standing to challenge PSA compliance

In his complaint and response, Plaintiff contends that the assignments are

void *ab initio*, because they occurred after the securitized trust closed and,

therefore, violated the PSA.   DE 1 ¶ 23, DE 11 at 7.   This type of claim was

considered by the Sixth Circuit in *Smith v. Litton Loan Servicing, LP*, 517 F.App'x.

395 (6th Cir. 2013).   In reviewing the district court's grant of summary judgment,

the Sixth Circuit considered Smith's argument that "Deutsche Bank Trust never

received ownership of the mortgage because the assignment of the mortgage to the

Trust violated the terms of the Trust's Pooling and Service Agreement."   *Smith*,

---

[13]"[A]lthough Plaintiff had standing to challenge the existence of record chain of title under MCL § 600.3204(3), he lacks standing to challenge the validity of the assignment at issue because he was not a party to that assignment."   *Hall*, 2014 WL 4639357, 4.

517 F.App'x at 397.   In other words, "Smith's argument [was] that the mortgage entered the Trust after the Pooling and Service Agreement's defined 'closing date' of the Trust, and therefore, the assignment of the mortgage was invalid."   *Id*. Referring to *Livonia*, 399 Fed. App'x. at 102-103, the Sixth Circuit stated, "Smith was neither a party nor a third-party beneficiary to the Pooling and Service Agreement, so even if its terms were violated, Smith may not challenge compliance with the Pooling and Service Agreement."   *Id*.

The Sixth Circuit further explained:   "If the Trust violated the terms of the Pooling and Service Agreement by accepting the mortgage, the beneficiaries of the Trust might have a cause of action, but this would make the assignment merely voidable."   *Id*. at 398.   The court continued, "there is no evidence that another party owns the note, so Smith has not put forth any evidence showing a genuine risk of having to pay the same debt twice. Smith may not challenge Deutsche Bank Trust's compliance with the terms of the Pooling and Service Agreement."   *Id*.

This case is no different.   Sutters has not put forth any evidence showing a genuine risk of having to pay the same debt twice.   Therefore, Sutters does not have standing to challenge compliance with the PSA.   Other circuit courts of appeal have ruled similarly.   *See, i.e.*, *Gonzales v. Bank of America, N.A.*, 574 F.App'x 441, 444 (5th Cir. 2014) ("borrowers who are not parties to a PSA 'have no

13

right to enforce its terms unless they are its intended third-party beneficiaries.'");

*Sigaran v. U.S. Bank Nat. Ass'n*, 560 F.App'x 410, 413 (5th Cir. 2014) (where "the

PSA specified the Trust's closing date would be October 30, 2006, but that their

loan was not assigned to U.S. Bank until August 30, 2008[,]" the court concluded,

"under either New York or Texas law, the Sigarans do not have the right to

challenge this violation of the terms of the PSA."); *Butler v. Deutsche Bank Trust*

*Co. Americas*, 748 F.3d 28, 37 (1st Cir. 2014) ("Under Massachusetts law, it is

clear that claims alleging disregard of a trust's PSA are considered voidable, not

void. . . . Thus, having only presented facts sufficient to show the assignment was

voidable under Massachusetts law, Butler lacks standing to challenge Deutsche

Bank's possession of the mortgage on this ground.") (citations omitted).

Moreover, the Eastern District of Michigan has penned similar rulings.   *See*

*Powell*, 2014 U.S. Dist. LEXIS 95121 (E.D. Mich. July 14, 2014) (Leitman, J.)

("Plaintiffs have not alleged that they were parties or third-party beneficiaries to

the PSA.") (*referencing Smith*, 517 F.App'x at 397) and *Moroso v. Wells Fargo*

*Home Mortg.*, No. 12-cv-11827, 2012 WL 3841395, 3 (E.D. Mich. Sept. 5, 2012)

(Steeh, J.) (in an opinion and order granting defendants' motion to dismiss and

denying plaintiff's motion to amend complaint, "defendants argue that even if

plaintiff's loan was transferred to the trust after the closing date she lacks standing

to challenge any alleged non-compliance with the terms of the trust.    A borrower
lacks standing to challenge a securitized trust's authority to enforce a loan note and
mortgage based on purported violations of the underlying pooling and servicing
agreement. . . . In this case, plaintiff lacks standing because plaintiff is not a party
to, or a third-party beneficiary of, the trust.    Plaintiff cannot identify any harm
because of any alleged failure to comply with the terms of the trust.    As
defendants complied with the foreclosure statute, the terms of any securitized trust
are irrelevant.").

Finally, as for Plaintiff's claim that this Court should apply New York trust
law (DE 1 ¶¶ 25-26), as recently as last year, the Fifth Circuit noted that " [t]he
assignment of the [Plaintiffs'] loan after the closing date makes that assignment
voidable, not void, and thus the [Plaintiffs] lack standing to challenge the
assignment under New York law."    *Sigaran*, 560 F.App'x. at 414.    As the court
stated in *In re Sandri*, 501 B.R. 369 (Bkrtcy. N.D. Cal. 2013), "New York
intermediate appellate courts have repeatedly and consistently found that an act in
violation of a trust agreement is voidable, not void."    *In re Sandri*, 501 B.R. at
375-376.[14]    Plaintiff has supplied no New York law to the contrary.

---

[14] *See Mooney v. Madden,* 193 A.D.2d 933, 597 N.Y.S.2d 775, 776 (1993);
*Leasing Serv. Corp. v. Vita Italian Rest., Inc.,* 171 A.D.2d 926, 927, 566 N.Y.S.2d
796, 797 (1991); *Hine v. Huntington,* 118 A.D. 585, 592, 103 N.Y.S. 535, 540
(1907); *In re Levy,* 69 A.D.3d 630, 632, 893 N.Y.S.2d 142, 144 (2010).

2.    **Whether Defendant U.S. Bank has violated 15 U.S.C. §§ 1692e ("False or misleading representations") and 1692f ("Unfair practices") of the FDCPA?**

The Fair Debt Collection Practices Act (FDCPA) is codified at 15 U.S.C. §§ 1692-1692p.   Plaintiff's third cause of action alleges that Defendant U.S. Bank has violated the FDCPA, seemingly 15 U.S.C. ¶¶ 1692e(5), 1692f(6)(A).   DE 1 ¶¶ 37-45. The Court should dismiss Plaintiff's FDCPA claim against Defendant U.S. Bank.

### a.    U.S. Bank Appears to be the Mortgagee

As an initial matter, Plaintiff's FDCPA claim is based upon the allegation that U.S. Bank did not have "possession of the mortgage and underlying note by virtue of a valid assignment."   *See*, DE 1 at 10-11 ¶¶ 40, 42 & 44.   For example, citing Section 1692f ("Unfair practices"), Subsection (6)(A), Plaintiff claims that Defendant U.S. Bank "has no right to possession of Plaintiff's property claimed as collateral through an enforceable security interest and should not have threatened and initiated foreclosure without having possession of the mortgage and underlying note by virtue of a valid assignment."   DE 1 ¶¶ 43-44.   However, for the reasons discussed above, the Court has no reason to doubt that U.S. Bank is the mortgagee by way of a valid assignment.

### b.    U.S. Bank Does Not Appear to be a Debt Collector

16

In addition, Plaintiff has not sufficiently alleged that U.S. Bank is a "debt collector" under the FDCPA.   *See* 15 U.S.C. § 1692a(6).   Although Plaintiff alleges that "Defendant U.S. Bank was assigned the Security Deed after Plaintiff defaulted on the loan[,]" DE 1 at 10 ¶ 38, and that U.S. Bank is a "debt collector" as defined by the FDCPA (DE 1 ¶ 39), "[p]laintiff bears the burden of establishing that Defendant is a debt collector." *Adams v. Bank of America, N.A.*, No. 12-11928, 2013 WL 1499492, 8 (E.D. Mich. Mar. 19, 2013) (report and recommendation of Binder, M.J., that defendants' partial motion to dismiss be granted) (citing *Golliday v. Chase Home Finance, LLC*, 761 F.Supp.2d 629, 635 (W.D. Mich. 2011)).

"For an entity that did not originate the debt in question but acquired it and attempts to collect on it, that entity is either a creditor or a debt collector depending on the default status of the debt at the time it was acquired." *Bridge v. Ocwen Federal Bank*, FSB, 681 F.3d 355, 359 (6th Cir. 2012).    The term "debt colletor" is defined in 15 U.S.C. § 1692a(6).   Excepted from this definition is "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity    . . . concerns a debt which was not in default at the time it was obtained by such person[.]"    15 U.S.C. § 1692a(6)(F)(iii).

17

Indeed, it seems that U.S. Bank is a creditor.   Plaintiff's FDCPA claim is devoid of information which would allow the Court to determine whether the mortgage was in default at the time U.S. Bank acquired it in 2011.   However, his pleadings indicate that the mortgage was *not in default* in 2011, based upon Plaintiff's allegation that Nationstar is responsible for the default (DE 1 ¶ 17) and Nationstar was assigned the mortgage in 2013 (DE 1 at 30-31).[15]   Plaintiff himself claims that U.S. Bank became his creditor when his loan was assigned to U.S. Bank in 2011 (DE 1 at 28-29, DE 6-4).   DE 11 at 9-10.

### c.   Plaintiff's claim is conclusory in nature

Plaintiff cites to Section 1692e ("False or misleading representations"), alleging that Defendant U.S. Bank "threatened [him] with foreclosure and then initiated foreclosure proceedings without having possession of the mortgage and underlying note by virtue of a valid assignment[,]" and further alleges that Defendant U.S. Bank "should not have threatened and initiated foreclosure against [him] without having possession of the mortgage and underlying note by virtue of a valid assignment[,]" DE 1 at 10 ¶¶ 40-42.   However, considering the United States Supreme Court's direction that, in order to state a claim for relief, a plaintiff

---

[15] *See also Junod v. Mortgage Electronic Registration Systems, Inc.*, 584 F.App'x 465, 468 (9th Cir. 2014) ("The SAC fails to state a claim against U.S. Bank under the FDCPA (Count 2) because it does not plausibly allege that U.S. Bank is a 'debt collector' within the meaning of the statute.").

18

must allege enough facts to make the claim plausible on its face, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), the Court agrees with Defendants that "Plaintiff's allegations are too thin to support a[n] FDCPA claim under Fed. R. Civ. P. 8."   DE 6 at 16; *see also Todd v. Collecto, Inc.*, 731 F.3d 734, 739 (7th Cir. 2013) ("his suit may not proceed if his allegations do not plausibly describe a debt collection practice that was unfair or unconscionable with respect to him.") (citing 15 U.S.C. §§ 1692f, 1692k); *Burnett v. Mortgage Electronic Registration Systems, Inc.*, 706 F.3d 1231, 1239 (10th Cir. 2013) ("Ms. Burnett's allegations with regard to § 1692e, which prohibits false representations made by a debt collector in connection with the collection of a debt, fall short of *Twombly/Iqbal* pleading standards.").   As noted above, plaintiffs' attack on the validity of the assignment is not legally sustainable.   Without alleging a more specifically identifiable and material falsehood, Plaintiff cannot support an FDCPA claim under 15 U.S.C. § 1692e.

　　　Furthermore, the notice described in the factual background of Plaintiff's complaint is one dated September 5, 2014 *from Orlans Associates, P.C.* (DE 1 at 6 ¶ 21), threatening to sell the property *on behalf of U.S. Bank*.   In his December 5, 2014 response, Plaintiff states that "U.S. Bank's notices of acceleration to Plaintiff contained standard language, demanding full and immediate payment of the debt,

while simultaneously threatening foreclosure." DE 11 at 10. None of this equates

with an FDCPA violation.

Finally, in response to the dispositive motion and without further

specification, Plaintiff raises the possibility that Defendant U.S. Bank failed to act

in accordance with 15 U.S.C. § 1692d ("Harassment or abuse") and failed to

validate a debt in accordance with 15 U.S.C. § 1692g ("Validation of debts"). At

least, this is what he *implies* by citing some law on these subjects. DE 11 at 8-9.

However, this report addresses only those claims which actually appear in

Plaintiff's September 15, 2014 complaint (DE 1), and these legal theories are not

among them.

### 3. Whether Defendant Nationstar violated RESPA 12 U.S.C. § 2605(e)?

The Real Estate Settlement Procedures Act of 1974 (RESPA) is codified at

12 U.S.C. §§ 2601-2610, 2614-2617. In his fourth cause of action, Plaintiff

contends that there has been a violation of 12 U.S.C. § 2605 ("Servicing of

mortgage loans and administration of escrow accounts"), Subsection (e) ("Duty of

loan servicer to respond to borrower inquiries"). DE 1 ¶¶ 46-54.

Presumably referring to his purported April 2014 RESPA qualified written

request (DE 1 at 5 ¶ 19, DE 1 at 14), Plaintiff claims that he "forwarded a Q[WR]

to Nationstar seeking, inter alia, information as to the accuracy of his mortgage

loan account and how his loan had been serviced."   DE 1 ¶ 47.   Plaintiff alleges

that his loan account was improperly serviced, because he was not properly

credited for payments he made.   DE 1 ¶ 48.   Plaintiff also alleges that

unauthorized fees were charged to his account.   DE ¶ 49.   The Court should

conclude that Plaintiff has failed to state a RESPA claim upon which relief may be

granted.

### a.   Plaintiff Doe not Sufficiently Allege the Existence of a QWR

Plaintiff's April 2014 letter does not appear to qualify as a QWR.   "[A]

qualified written request shall be a written correspondence, other than notice on a

payment coupon or other payment medium supplied by the servicer, that--

> (i) includes, or otherwise enables the servicer to identify, the name
> and account of the borrower; and

> (ii) includes a statement of the reasons for the belief of the borrower,
> to the extent applicable, that the account is in error or provides
> sufficient detail to the servicer regarding other information sought by
> the borrower.

12 U.S.C. § 2605(e)(1)(B).

"A letter does not constitute a QWR as defined by RESPA if the letter does

not relate to the servicing of a borrower's loan as defined under 12 U.S.C. §

2605(i)(3) or does not identify any error as required by § 2605(e)(1)(B)."

*Donaldson v. U.S. Bank Nat. Ass'n*, No. 12-13435, 2014 WL 4863080, 5 (E.D.

Mich. Sept. 30, 2014) (Hood, J.).   "'Servicing' of a loan means receiving any scheduled period payments from a borrower pursuant to the terms of any loan, including any escrow accounts, and making the payments of principal and interest and any other payments required by the terms of the loan."   *Donaldson*, 2014 WL 4863080 at 5 (citing 12 U.S.C. § 2605(i)(3)); *see also Drew v. Kemp-Brooks*, 802 F.Supp.2d 889, 898 (E.D. Mich. 2011) (Cohn, J.) ("Because the letters do not relate to the right to receive payments and/or make payments pursuant to the mortgage and/or note, they are not proper QWR requests under RESPA and no response was required.").

Citing Plaintiff's allegation that he sent a QWR to Nationstar (DE 1 ¶ 47), and also citing 12 U.S.C. § 2605(e)(1)(B), Defendants allege that "Plaintiff does not plead any facts illustrating that his alleged correspondence with Nationstar in April 2014 meets the definition of a QWR."   Then, citing Plaintiff's purported QWR (DE 1 at 14), Defendants state, "[w]ithout more, this does not appear to be a QWR within the meaning of 12 U.S.C. [§] 2605."   DE 6 at 19.   Plaintiff responds by reasserting several allegations from his RESPA cause of action (DE 1 ¶¶ 47-53) and concluding that he has adequately alleged a RESPA claim against Defendant Nationstar.   DE 11 at 13.

22

Plaintiff's complaint does not sufficiently allege that the purported April 2014 letter is a 12 U.S.C. § 2605(e)(1)(B) QWR.   To be sure, Plaintiff's purported April 2014 letter to Nationstar, *is labeled as* a RESPA Qualified Written Request, *asks to be interpreted as such* in its opening line, and contains Plaintiff's name and the account number, as required by 12 U.S.C. § 2605(e)(1)(B)(i).   Moreover, the letter does state, in part, "I am disputing the accuracy of the current owed balance of my mortgage loan account.   Specifically, there are discrepancies as to how my mortgage loan account is being serviced and how credits for money that I have paid have been applied to my mortgage loan account."   DE 1 at 5-6 ¶ 19, DE 1 at 14.

However, the complaint and exhibit do not adequately comply with 12 U.S.C. § 2605(e)(1)(B)(ii).   In other words, it does not contain "a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower."   *Id.*   Here, it is important to note that there is a significant discrepancy between what Plaintiff *alleges he sought* in the letter (DE 1 at 5-6 ¶ 19, DE 1 at 11 ¶ 47) and the letter itself, which is attached to the complaint (DE 1 at 14).   For example, Plaintiff's complaint alleges that his April 28, 2014 QWR to Nationstar requested that Nationstar provide:

> (1) A complete audit history from alleged loan origination, showing the dates payments were applied, and to what internal accounts (i.e. principal, interest, suspense, escrow, etc.) payments were applied;
>
> (2) A complete and itemized statement of all advances or charges against this account; and
>
> (3) A complete and itemized statement of the escrow for this account, if any, from the date of the note origination to the date of your response to this letter.

DE 1 at 5-6 ¶ 19.   Were this the case, the Court might conclude that Plaintiff's purported QWR satisfied the statutory description of a QWR.

Instead, Plaintiff's one-page alleged RESPA QWR, which is attached to his complaint, simply asks for a copy of "the original promissory note and security instrument" and "all assignments of the security instrument[,]" as well as the identity and contact information for "the actual entity that funded the transaction." DE 1 at 14.   Moreover, while Plaintiff's complaint alleges that he was charged unauthorized fees (DE 1 ¶ 49), this term does not appear in the purported QWR (DE 1 at 14), although he so alleges in his response (DE 11 at 4).   Additionally, while Plaintiff responds that his QWR "asked that the defendants investigate the account and provide Plaintiff the corrected account information[,]" DE 11 at 4, the letter itself lists the matters Plaintiff disputes and notes that Plaintiff "requires proof" of both the chain of secured ownership and that Nationstar is the entity contracted to work on the alleged lender/creditor's behalf (DE 1 at 14).

24

The letter itself, and not plaintiff's own characterization of its contents, constitutes the best evidence of what it actually contains.   *See, Rodriguez v. Senor Frog's De La Isla, Inc.,* 642 F.3d 28, 34 (1st Cir. 2011) ("the best evidence rule requires a party trying to prove the 'content' of a written document to introduce the document itself".).   Thus, the Court is left to conclude that Plaintiff's purported QWR (DE 1 at 14) does not satisfy 12 U.S.C. § 2605(e)(1)(B)(ii).

### b.  Plaintiff Fails to State a Claim of a RESPA Violation

### i.  Plaintiff's Exhibits Contradict His Claim

Even if this Court were to conclude that Plaintiff's April 2014 letter satisfied 12 U.S.C. § 2605(e)(1)(B)(ii) and was, therefore, a bonafide QWR, Plaintiff has not adequately stated a claim that Defendant Nationstar failed to respond in accordance with 12 U.S.C. § 2605(e)(2).   There is no dispute that the law requires a loan servicer to take certain actions as delineated in 12 U.S.C. §2605(e)(2) once it receives a valid QWR from a borrower. The Court acknowledges that Plaintiff does generally allege that Nationstar "did not respond to Plaintiff's April 28, 2014 QWR [and] did not acknowledge or provide Plaintiff with the information that was sought."   DE 1 ¶ 20.   Then, within his RESPA count, Plaintiff alleges that "Nationstar did not respond to his QWR, took no responsive action and undertook no investigation into the issue raised by Plaintiff's QWR."   DE 1 at 12 ¶ 53.   It

25

is Defendants' position that, "Plaintiff attaches to the Complaint the very documents sought in his purported QWR, which seems to belie the allegation that Nationstar ignored his correspondence."   DE 6 at 20.

Here, the Court notes that, by whatever means, Plaintiff is in possession of the information sought by the purported QWR's enumerated requests, because the attachments to Plaintiff's complaint include the mortgage (DE 1 at 15-27), the assignments (DE 1 at 28-29, 30-31, 32-33 & 36-37) and a legal description of the property in question (DE 1 at 34-35).   "A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c).   Documents attached to pleadings become part of the pleadings and may be considered in a motion under Rule 12. *Commercial Money Ctr. V. Illinois Union Ins. Co.,* 508 F.3d 327, 335 (6th Cir. 2007).   "When a document is referred to in the pleadings and is integral to the claims it may be considered without converting the motion to dismiss into one for summary judgment." *Id. (citing, Jackson v. city of Columbus,* 184 F.3d 737, 745 (6th Cir. 1999).   "[I]n the case of a conflict between the exhibit in the pleading, courts normally find that the exhibit controls." 2 *Moore's Federal Practice* (3d Ed.), §10.05[5] (*citing, Consolidated Jewelers Inc. v. Standard Fin. Corp.,* 325 F.2d 31, 36 (6th Cir. 1963)).

### ii.    Plaintiff's Claim is Conclusory

Furthermore, Plaintiff's claims that Defendant Nationstar did not comply with 12 U.S.C. § 2605(e)(2) are conclusory.   "Courts that have addressed the adequacy of pleading RESPA claims have repeatedly held that a plaintiff cannot maintain an action under RESPA by merely alleging that they sent a QWR and defendant failed to respond."   *Dunn-Mason v. JP Morgan Chase Bank, N.A.*, No. 11-13419, 2013 WL 5913684, 9 (E.D. Mich. Nov. 1, 2013) (Murphy, J.) (quotations omitted).

### iii.    Plaintiff Fails to Properly Allege Causation and Damages

Third, there are the issues of causation and damages.   *See* 12 U.S.C. 2605(f)(1).   Even if the Court disagrees with the foregoing and concludes that Plaintiff has sufficiently alleged that his purported QWR satisfied § 2605(e)(1)(B)(ii) and that Nationstar did not respond to it in accordance with §2605(e)(2), the Court should also consider whether Plaintiff has adequately alleged causation and damages as set forth in § 2605(f) ("Damages and costs").

Plaintiff generally alleges that, while he has purportedly defaulted on his loan, "Defendant Nationstar is responsible for his default by its failure to apply credits for payments he has made on the account and for charging his loan account unauthorized fees."   DE 1 ¶ 17.   Within his RESPA count, Plaintiff alleges that his damages include "not having all monies properly credited to his mortgage loan

27

account[,]" and "having unauthorized fees charged to his mortgage loan account." DE 1 ¶¶ 50, 51. It is Plaintiff's position that "he would not be in default if he had received all credits for the money he has paid on his mortgage loan account and if his loan account had not been charged unauthorized fees." DE 1 ¶ 52. *See also* DE 1 ¶ 54; DE 11 at 13.

In their dispositive motion, Defendants point out that "Plaintiff has failed to allege any damages arising from the purported failure to respond . . . ." DE 6 at 20. In their motion and reply, Defendants rely in part upon *Drew*, 802 F.Supp.2d at 898 ("even if Plaintiff's letters were QWRs and Chase failed to respond to them, Plaintiff does not allege that he sustained any **actual damages** as a result of the alleged failure. Plaintiff's bare allegation that Chase did not respond, without any factual support or allegations of damages, is not sufficient to state a RESPA claim.").

Actual damages are required for relief under the statute, unless a pattern and practice of noncompliance is shown (not alleged here) or in the case of a class action (not applicable here). 12 U.S.C. §2605(f); *see also Battah v. ResMAE Mortg. Corp.*, 746 F.Supp.2d 869, 876 (E.D. Mich. 2010) (Rosen, J.).[16]

---

[16] "To successfully plead a RESPA claim, Plaintiff must allege actual damages, which resulted from the Bank Defendants' failure to respond to Plaintiff's QWRs.[] The complete absence of alleged damages warrants a dismissal of Plaintiff's RESPA

Moreover, where a plaintiff fails to "allege any causal link between Defendant's allegedly inadequate response to his QWRs and any actual damages suffered, his Complaint fails to plead a plausible RESPA claim." *Mekani v. Homecomings Financial, LLC*, 752 F.Supp.2d 785, 795-796 (E.D. Mich.2010) (Borman, J.).   In this case, Plaintiff pleads neither actual damages, nor the requisite causal link.[17] Among other vagaries in the complaint, it is not clear when the default occurred. Considering Plaintiff's allegation that Nationstar is responsible for the default "by its failure to apply credits for payments he has made on the account and for charging his loan account unauthorized fees[,]" DE 1 ¶ 17, it seems that Plaintiff is complaining about Nationstar's actions from July 1, 2013, when it began servicing the loan (DE 6-12), through the July 23, 2013 assignment of the mortgage to Nationstar (DE 1 at 30-31, DE 6-6) and up to Nationstar's August 18, 2014 assignment of the mortgage to U.S. Bank (DE 1 at 36-37; DE 6-7).[18]

---

claim."   *Battah*, 746 F.Supp.2d at 876 (citations omitted).

[17]Still, the Court should be cautious when dismissing Plaintiff's RESPA claim on the sole basis that he does not adequately allege damages, because a more recent Sixth Circuit published case, which cites unpublished decisions in *Mellentine v. Ameriquest Mortg. Co.*, 515 F.App'x 419, 424–25 (6th Cir.2013) and *Houston v. U.S. Bank Home Mortg. Wis. Servicing*, 505 F.App'x 543, 548 (6th Cir.2012), counsels "against dismissal of RESPA claims on the basis of inartfully-pleaded actual damages."   *Marais v. Chase Home Finance LLC*, 736 F.3d 711, 722 (6th Cir. 2013).

[18]Buttressing this time line is Plaintiff's allegation that the default occurred before the assignment to U.S. Bank.   *See* DE 1 at ¶¶ 18 & 38.

Thus, while it appears *possible* that a default which occurred between July 1, 2013 and August 18, 2014 could have been avoided had Defendant Nationstar responded to Plaintiff's purported April 2014 QWR in accordance with §2605(e)(2), Plaintiff is really alleging that he would not be in default if Nationstar *had properly serviced his mortgage*.   DE 1 ¶ 52.   This interpretation is buttressed by the following statement in Plaintiff's response:   "Defendant Nationstar improperly serviced his loan account and *thereby caus[ed]* a default." DE 11 at 15 (emphasis added).   Additionally, Plaintiff does not actually inform the Court or the Defendants how, if at all, *the alleged RESPA violations* caused his default.

### 4.   Whether Plaintiff is entitled to injunctive relief from U.S. Bank's foreclosure of the subject property?

Plaintiff's second cause of action requests preliminary injunctive relief. DE 1 at 7-9 ¶¶ 28-36.   The Court must balance four factors when considering whether to grant preliminary injunctive relief:   "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction."   *City of Pontiac Retired Employees Ass'n v. Schimmel*, 751 F.3d 427, 430 (6th Cir. 2014) (quotations and citations omitted).

Referring to his cause of action alleging that the assignments of his mortgage contravene the securitized trust (*see* DE 1 ¶¶ 22-27), Plaintiff requests preliminary injunctive relief from what would be an unlawful foreclosure by U.S. Bank.   DE 1 ¶ 28.   According to Plaintiff, he:

> . . . has a clear legal right to seek injunctive relief inasmuch as Plaintiff is the lawful owner of the subject property, and Defendant U.S. Bank has undertaken, without evidence that it lawfully accrued the right by virtue of a valid assignment to accelerate the debt and conduct a foreclosure sale, take custody and/or control of Plaintiff's Property and to market and ultimately [sell] the Property.
>
> . . .   has no adequate remedy at law to redress the harm complained of, and the sale of the Plaintiff's Property, under the circumstances of record, was contrary to law, equity, justice and good conscience in that said sale has been conducted by parties, Defendant U.S. Bank, who has no legal authority to institute or execute the foreclosure.

DE 1 ¶¶ 31-32.

Citing ¶ 29 of Plaintiff's Complaint, Defendants argue: "Plaintiff has virtually no chance of success on the merits; none of Plaintiff's claims should endure past Rule 12.   There is no basis to exercise the extreme remedy of an injunction, when the underlying claims are based upon the spurious theory that the holder of the mortgage or servicer cannot foreclose upon a defaulted mortgage due to purportedly void assignments."   DE 6 at 23.

The undersigned recognizes Plaintiff's allegation (DE 1 ¶ 29) and his argument (DE 11 at 15) regarding irreparable harm.   "[W]hen interests involving

31

real property are at stake, preliminary injunctive relief can be particularly appropriate because of the unique nature of the property interest." *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1210 (10th Cir. 2009) (quotations and citations omitted); *see also Minard Run Oil Co. v. U.S. Forest Service*, 670 F.3d 236, 256 (3d Cir. 2011) (same), *Bean v. Independent American Sav. Ass'n,* 838 F.2d 739, 743 (5th Cir. 1988) ("Bean faces irreparable injury should IASA foreclose before we have determined the merits of the appeal. Because Bean stands to lose interests in real property, which we presume are unique, there is no adequate post-foreclosure remedy that could substitute for injunctive relief.").

However, even though Plaintiff alleges that "[a] preliminary injunction should issue so that, at minimum, Plaintiff can conduct reasonable discovery into relevant events and transactions[,]" DE 1 at 9 ¶ 33, and even though Plaintiff alleges that the harm he will suffer in the absence of preliminary injunctive relief far outweighs any potential harm to Defendant U.S. Bank (DE 1 at 8-9 ¶ 33), there is public interest in the relief sought (DE 1 ¶ 34), there is a likelihood of success on the merits (DE 1 ¶ 35), and there would be no harm to Defendant U.S. Bank (DE 1 ¶ 36), Plaintiff has not stated a legal claim upon which relief may be granted and he therefore cannot establish that he is likely to succeed on the merits.   Thus, the Court need not address his request for injunctive relief.

## III.   **NOTICE TO PARTIES REGARDING OBJECTIONS:**

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).   Failure to file specific objections constitutes a waiver of any further right of appeal.   *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981).   Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.   *Willis v. Sec'y of Health & Human Servs.*, 932 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).   Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*   Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.   Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.   Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).   The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1,"

"Response to Objection No. 2," *etc.*   If the Court determines that any objections

are without merit, it may rule without awaiting the response.


Dated: April 30, 2015         s/ Anthony P. Patti
                              Anthony P. Patti
                              UNITED STATES MAGISTRATE JUDGE


I hereby certify that a copy of the foregoing document was sent to parties of record
on April 30, 2015, electronically and/or by U.S. Mail.

                              s/Michael Williams
                              Case Manager for the
                              Honorable Anthony P. Patti

34